Learned, P. J.
The law requires that real estate be assessed at its full value, or, as it was formerly expressed, at the sum for which it would be appraised for the payment of a just debt by a solvent debtor. Many considerations must have a share in determining this value. Among them are actual sales of the property, or of similar property, and the earning capacity of the property itself. Ho one consideration is conclusive. All may be properly taken into account. Sometimes houses of large cost will rent for only a small interest on their cost and on their value in the market. Other kinds of real estate may bring a large income upon their cost and on their value in the market. So that to take the earning capacity as the sole measure would be incorrect, while yet it may properly have its influence. But there is one important rule: mortgages or liens on land are not to be deducted in ascertaining value. Hence it very plainly follows that if the earning capacity of real estate is to be considered at all, that capacity is not to be reduced by the interest payable on any mortgage. For instance, if, in estimating the value < of a lot and building, it appears that it rents for $2,500 a year, it is quite immaterial that there is a mortgage on the property on which the annual interest is $2,000. The earning capacity of the lot and building is just the same, whether there is a sole owner or several owners, and whether the owner lias a clear or an incumbered title. The assessment is on the property, and it is just as much when the property is incumbered for more than it is worth as when it is free. And so the rental value of the property is just the same, whether the whole rent goes to the owner, or whether he pays half or three-quarters of it to a mortgagee. These principles are perfectly clear, and there could be no doubt in regard to them when we consider farms, lots, buildings, and the like. Certainly, so far as may be, real estate belonging to a railroad company should be governed by the same rules. Some modifications in estimating earning capacity must arise. A piece of a railroad passing through a town is to be assessed. In assessing it the earning capacity may be considered. This earning capacity can hardly be ascertained except by reference to such capacity as it belongs to the whole road, and this view has been taken by the courts. In ascertaining such earning capacity it is, of course, proper to deduct operating expenses. But the point now urged by the appellants is that, in estimating such earning capacity of the whole road, the learned justice deducted from the total receipts, not only the operating expenses, but also the interest on the mortgage debt. And the appellants urge that this is *88 incorrect; that if a building (as above supposed) rented for $2,500, and the annual interest of a mortgage thereon was $2,000, it would be erroneous to take $500 as the earning capacity of the building, and to allow such an estimate to be used as a basis for assessing its. actual value. Now, it does not appear by the order of the special term that such deduction of interest was made. In his opinion the learned justice speaks of “ net earnings, ” but he may mean by this, earnings less operating expenses, but not less interest. He refers to the case of People v. Hicks, 40 Hun, 598, affirmed, 105 N. Y. 198, 11 N. E. Rep. 653, and we may suppose that he used the words “net earnings” as there used. And in that case no deduction was made for interest on mortgages. Unless there is some evidence to the contrary in the case we should presume that he followed the computation there approved. This point is urged so strongly by the appellants that we have endeavored to find, from the case as well as from the opinion, whether there is any ground for it. We do not discover from the case before us that it was claimed by the relator, or made the basis of the relator’s computation, that the interest on mortgages should be deducted from the gross expenses when estimating the earning capacity. In the tabulated statement, which is referred to in the respondent’s points, operating expenses and taxes are deducted. Taxes are not mentioned specially in the case above cited. But we cannot say that they may not be considered. They .are an important element in estimating the earning capacity of other real estate. We have referred to the points of the respondent, and find that, except as above stated, they insist only on the same deduction from gross earnings as are approved in the case cited. Upon examining the statements put in evidence, and the testimony, we find it stated that, under the head of “Operating Expenses,” would be'included all outgo except new construction or extension, new equipments, interest, and taxes; so that we have no reason to think that there was such a deduction of interest on mortgages as is above mentioned. The affidavits take a single year, 1886, and by a computation based on that year’s statement, make the value much greater than that established by the learned judge. But estimates of earning capacity may be properly extended over several years. A steady increase would, of course, indicate an improvement in value, and would be, doubtless, considered in the final adj ustment'. The price given on an actual sale is undoubtedly an important circumstance, and it is urged by the appellants that the price specified in the articles of consolidation was a better criterion of value than any estimate of earning capacity. The learned justice thought that that price should not control. It is quite evident that a sum to be paid in stock and bonds on the consolidation of two railroads is by no means the sum at which one of them would be taken in payment of a just debt by a solvent debtor. In such a consolidation a large price is often given in bonds or stock, which, perhaps, have little present value in the market, but which it is expected will be valuable in the future. In that rise of value consists often the profit of the transaction. Future increase of value in the, property the learned justice mentions in his opinion as a matter which he has kept in view in adjusting the present value as it should have been assessed, so that he has given weight to the possible increase in value arising from the consolidation. It is shown that the relator appeared at the grievance day before the assessors, and presented the proper information, showing the railroad earnings, the decisions on this subject, and specially an extract from the decision of Mr. Justice Peckham, in a similar case, in behalf of the B. H. T. & W. R. R. Company, decided in April, 1886. On the present hearing several of the assessors (of different towns) testified. It appears that they did not take into account the earning capacity of the road. One said, in regard to the decision last above cited, that there was a higher power than the justice who decided it; and- it seems to be quite clear that the assessors were not guided by the evidence thus offered, and paid no attention to it. This was a violation of duty. A mis *89 taken decision may be the result of bad judgment; but the intentional disregard of proper evidence, especially in officers vested with so much power as assessors have, is a serious wrong-doing. The question which was before the learned justice was principally one of fact. We have found nothing to indicate that he has followed any incorrect rule of law, and we see nothing in the facts of the case to show that he has placed the valuation too low. We think, therefore, that the order should be affirmed, with $50 costs of appeal and dis.bursements, to be paid by the assessors personally.
Landon and Ingalls, JJ., concur.