ESTHER HIRSCH et al., Respondents, *v.* MORRIS WEINER, Appellant.

(Supreme Court, Appellate Term, Second Department, August, 1921.)

**Landlord and tenant — action for rent under leases made prior to September 27, 1920 — " reasonable rent "— how determined.**

Any investor in real estate should at least get as much income therefrom as the investor in mortgages on realty and franchises, which at the present time are producing income at eight per cent to eight and one-half per cent

In an action to recover rent of premises in the city of New York under written leases executed prior to September 27, 1920, when the housing statutes went into effect, the plaintiffs, while claiming that the rent reserved in the leases was the reasonable rental value of the premises, stipulated on the trial that they would accept as the proper amount of net income seven per cent on the fair market value of the premises. *Held,* that the question of the reasonableness of the rent should be determined as follows:

1. Determine the present fair market value of the premises by opinion evidence as to both fee and rental value, or other competent evidence.

2. Determine the gross rentals demanded by the landlord.

3. Determine the allowable operating expenses for the past year, which ordinarily consist of payments for taxes, water rates, insurance, janitor services and necessary legal expenses incidental to maintaining the landlord's right to possession and for collecting rents; also payments for necessary supplies incident to the use of the premises, such as coal, gas and electricity, and also necessary current repairs for the year. Allowance should also be made for loss of rent, and for annual depreciation — two per cent per year — upon the fair market value of the buildings, if established.

4. Deduct from the gross rentals the operating expenses to ascertain the net rental, and if this does not exceed ten per cent of the present value of the property, the rent demanded is not unreasonable.

The landlord getting a return as rent on his total investment, which includes that part represented by mortgages on the property which must be paid, will not be allowed to charge, as an operating expense, the interest paid on the mortgages or any expense in negotiating the same.

Judgment in favor of plaintiffs upon a finding that the net rental was much less than ten per cent and, therefore, reasonable, affirmed.

APPEAL from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, sixth district, rendered in favor of the plaintiffs, landlords, in an action to recover the reasonable rent of premises occupied by the defendant, tenant.

Harold G. Aron, for appellant.

Edward A. Richards, for respondents.

KELBY, J.    Thirty-four actions were brought against as many tenants living in premises 2104 and 2114 Caton avenue, in the borough of Brooklyn, city of New York. All of these actions were tried together as one, and separate judgments rendered. Each of the actions was brought to recover five months' rent, viz., for the months of October, November and December, 1920, and January and February, 1921. The amount of rent reserved in written leases, executed by the several parties herein, is claimed to be the reasonable rental value of the several apartments.

In the particular action tried, the one arising under the tenancy of Morris Weiner, it appeared that a written lease was executed by the landlords and Weiner on July 20, 1920, for one year from October 1, 1920, to September 30, 1921. The majority of the other written leases with the other tenants were executed for the same term in the month of August, 1920.

Appellate Term, Second Department, August, 1921. [Vol. 116.

All of them therefore were executed prior to the housing bills passed at the special legislative session of September, 1920, and which became law September 27, 1920.

The answer of the tenant in the case at bar simply sets up the affirmative defense under the statute that the amount of rent sued for was " unjust and unreasonable, and that the agreement under which the same was sought to be recovered is oppressive." The answer also sets up as a separate defense " that the premises were unfit for the purposes for which demised." No mention of this latter so-called defense appears elsewhere in the record, and no attention will be accorded to it in this court.

At the opening of the trial it was stipulated that the rent of the tenant's apartment had been increased over the rent as it existed one year prior to the agreement under which rent is now sought to be recovered.

The plaintiffs then undertook the burden under chapter 944, Laws of 1920, of showing that the amount of rent sued for was reasonable. The plaintiffs offered and the trial judge admitted opinion evidence of real estate experts as to the present market and rental value of the premises. And the plaintiffs further undertook to prove their operating expenses of the premises during the past year as shown by the bill of particulars.

What is a reasonable rent? And what factors are to be considered in determining the reasonableness of rent? Questions of law arise under the new statutes which many of the trial justices decide in different ways. Some trial justices allow income on actual money invested only; some on the landlord's equity; some say that they never make allowances for depreciation; others that they never allow legal expenses; ordinary repairs are spread over a period of years

by some justices, while others add repairs to capital account.

The statutes could easily have been made more definite and certain, but we have to deal with them as they are, and endeavor to lay down some general principles by which they should be interpreted. The facts in the present case will aid in elucidating a general rule.

It appears that the present landlords purchased the property in February, 1920, for the sum of $196,000 and that the total gross rental at the time of purchase was $27,000. The assessed valuation for 1920 was $192,000. The property was assessed for the year 1921 at $245,000, but it appears this assessment has been reduced to $215,000. The value of the lots it appears is $25,000.

The premises 2104 Caton avenue contains sixteen apartments and seventy rooms and has upon it a first mortgage of $36,000 at five and one-half per cent, and a second mortgage of $27,750 at six per cent. The premises 2114 Caton avenue contains twenty-three apartments and one hundred and eight rooms and has a first mortgage of $52,500 at six per cent, and a second mortgage of $36,000 at six per cent. Plaintiffs claim an estimated charge for renewing mortgages of $1,000. Taxes for the year were $4,876.80. Water rates $456.86. Yearly insurance $380.48. Janitor's services $1,375. Coal bill $4,888.80. Gas and electric bills $236.12. The yearly repairs claimed by the landlords and supported by proof were $4,423.31. A claim of $1,725.45 for services in collecting rents and for supervising the property was also made, the rents being collected in this case by the husband of one of the owners. There was also a claim for loss of rents of $292.25, which is not supported by the proof.

The evidence supports a finding that the fair market

value of the premises at the time of the commencement of the action was $215,000 and the value of the land $25,000, leaving the value of the buildings $190,000.

It is the appellant's contention that the landlords are entitled to a fair return only on the amount of cash actually paid as part consideration for the premises, viz: $49,750, and not upon the fair market value of the premises prevailing at the time for which rent is sought to be recovered, nor even upon the full consideration of $196,000. This contention is clearly unsound. The amount of cash paid by an owner when purchasing cannot help to determine the amount he should have as his net rental. If this were so, an owner whose property came to him by will or gift in any form would not be entitled to any net return and could charge as rent only enough to pay the expenses. And under such a rule an owner whose property was free and clear, though he may have borrowed from his bank or elsewhere every dollar he paid for it, would be entitled to, and would obtain, a larger net return than if he had mortgaged the property for a part or the whole of its cost. If a house were purchased for $10,000 and the purchaser paid $1,000 in cash and gave back a purchase money mortgage for $9,000, he is still obligated to pay the $9,000. If appellant's theory were correct the buyer would only be entitled to as net income for rent, a fair percentage, say at most ten per cent on the $1,000, or $100 a year, as net rent for a $10,000 property.

We think it matters not, in determining the reasonableness of a rent charge, whether the property is mortgaged. Its rental value is in no way affected thereby. This is the recognized rule. *People ex rel. Fitchburgh R. Co.* v. *Haren,* 19 N. Y. St. Repr. 818; 3 N. Y. Supp. 86. If this were not the rule there would

be discrimination, and the reasonable rental of one property would be larger than that of another though the properties and their operating expenses were identical.. Take this as an illustration: Two houses exactly alike and adjoining each other, both free and clear and under same ownership and with the same amount of. operating expense; each should yield the same return and there should be no difference in their rental value; but if the owner placed a mortgage on one of the houses the rental value of that one would be lessened, while the rental value of the other one would remain as it had been. This would be the. result if the fair and reasonable net rents allowable were in excess of six per cent or of the rate of interest carried by the mortgage.

And the higher the rate of interest paid on the mortgage the greater would be the amount of the reasonable rent charge. This may be demonstrated: Assume property worth $5,000 free and clear, reasonable net return ten per cent, or $500; operating expense $500; the reasonable gross rentals, upon this hypothesis, would be $1,000 — the total of the expenses and the reasonable net return. Assume the same situation, except that the property is mortgaged for $3,000 with interest at six per cent; then if the mortgage should be considered, the owner's net return of ten per cent would be figured only on the equity of $2,000 and would be $200; this amount plus the operating expense of $500, plus interest on mortgage of $180 totals $880, which would be the reasonable gross rental. Assume again a situation as last stated, except that the interest rate on the mortgage was five per cent; then the gross rental would be $850. Upon that basis the rental value increases as the interest rate on the mortgage increases, but decreases as the amount of the mortgage increases. And the logical conclusion from

such a method of calculating rental value would be that if the mortgage equalled or exceeded the property's value the owner would not be entitled to any net return and the rental value would just equal the operating expenses.

The September housing legislation (Laws of 1920, chap. 944) requires the landlord to give a bill of particulars. This must include among other things the annual interest charge upon any incumbrance paid by the landlord and " such other facts as the landlord claims affect his net income from such property." It is argued that this shows the legislature intended mortgages to be considered in fixing rental value. But we do not so construe those provisions. The rule to which we have called attention says it is immaterial whether the property is mortgaged. This holding is well established and has been recognized generally and should not be deemed changed unless there is a plain legislative direction to that effect. We find none in these statutes. The reference to interest paid on mortgages may be disregarded.

We know no other logical method for determining rental value than to take the present market value of the property regardless of its incumbrances as one of the factors. What the owner paid for it may be some evidence of its present value or it may not be, depending upon the time of, and the circumstances surrounding its purchase. The Appellate Term in the first department has held otherwise in *Hall Realty Co.* v. *Moos,* 115 Misc. Rep. 506. There it is said that proof of present value is inadmissible and that the owner is entitled only to a " reasonable income on his investment." The same court, however, has also said in another case (*Schwartz* v. *Deutsch,* 187 N. Y. Supp. 521) : " * * * the return upon the investment of the owner of the apartment, *or at least upon the value of*

*the premises,* should be a material factor in determining what amount will constitute a reasonable rental.'' This statement may mean that the value of the property is to be the factor only if it be less than the amount of the owner's investment. But why should such a rule prevail? If the investment of the owner be the basis, it should be used in all cases. There should not be one basis for one case and a different basis for another. The courts cannot prescribe one rule for '' Mr. White '' and another rule for '' Mr. Black.'' If the amount of the investment be the factor, then does it matter when the property was bought and the investment made? Or is not the owner's real investment in his property the sum it is worth — the amount for which he can sell it?

If the rental value is to be determined in part by what the owner paid for the property, would he have any '' investment '' if the property came to him by will? And if the investment exceeded the property's present value, why should a tenant be obliged to pay a larger rent because of that fact? Though property has been acquired for $10,000, maybe a number of years ago, if it be fairly worth $15,000 now, why should not the owner who has held it all the time have a fair return upon the amount it now represents? If he sold it for $15,000 the new owner would be entitled to rentals based upon that figure. We think the change of ownership should not affect the rental value. That value is the same regardless of who the owner is or may be. Rental value is not a matter of individuality.

It is obvious that expenses for taxes, insurance, janitor services, repairs, gas and electricity, should be allowed an owner in calculating what gross income should be allowed. We think it is established in this case, as well as in other cases before us, that an annual

charge for depreciation on the value of the buildings at the time for which rent is sought, should be allowed. The great weight of evidence is that an annual charge of two per cent per year for depreciation on the value of the buildings is fair. The federal and state governments allow such depreciation in the calculation of income tax. There is also judicial authority for some allowance for depreciation. *Schwartz* v. *Deutsch,* 187 N. Y. Supp. 521.

When vacancies are proven allowance should also be made for failure of rent by reason thereof.

It also appeared in the evidence that the landlords had paid or obligated themselves to pay for repairs made to a boiler on the premises. Two sections of the boiler had become defective and were replaced by the landlords, at an expense of $575. There was also included in the repair account, a new floor on the roof at a cost of $400, new electric wiring $773, awnings and window shades $45, and new plumbing $925. Appellant claims that the items for boiler, awnings and window shades, and new plumbing should be distributable against future earnings for "a period of years;" that the item for new floor should be considered "a replacement chargeable against depreciation reserve;" and that the item for electric wiring should be considered an addition to investment and capitalized. We think all of these items were properly allowed by the court below as current repairs. There are, of course, instances where buildings are largely remodeled and rebuilt where the improvement should be charged to increase of capital, but the items here for review are not of that character. Nor is the court impressed with the argument that repairs should be spread over a period of years and charged against future income. If that were so repairs made in the

past should be brought forward and charged to current income.

In the case at bar the landlords stipulated that they would accept seven per cent on the fair value of the premises as the proper amount of net income. We think that this is not only fair, but that a larger rate of net income would be fair. The evidence shows that at the present time one can buy with reasonable safety first mortgage coupon bonds that are producing income at eight per cent to eight and one-half per cent. The investor in real estate, if building of houses is to be encouraged, should at least get as much income from real property, with all its attendant trouble, as the investor in mortgages on realty and franchises.

We think the sensible way to determine these questions is as follows:

1. Determine the present fair market value of the premises. This may be done by offering opinion evidence as to both fee and rental value (see *Graeber* **v.** *Nichols,* decided by this court on December 30, 1920), or by introducing other competent evidence.

2. Determine the gross rentals demanded by the landlord.

3. Determine the allowable operating expenses for the past year. These ordinarily consist of payments for taxes, water rates, insurance, janitor's services, necessary legal expenses made by the landlord incidental to maintaining his right to possession and necessary expenses actually paid out for collecting rents; also payments for necessary supplies incident to the use of the premises, such as coal, gas and electricity, and also necessary current repairs for the year. Allowance should also be made for loss of rents by reason of vacancies or tenant failing to pay. Allowance for annual depreciation if established by

21

the proof should be made upon the fair market value of the buildings.

4. Deduct from the gross rentals the operating expenses and this will give the net rental.

5. If this net rental does not exceed ten per cent of the present value of the property, then the rent demanded is not unreasonable. The reasonableness of a rent charge may vary under changing financial conditions. Upon the proof in this record showing the return upon other well recognized and generally accepted forms of investment we think that ten per cent as a net return to an owner of real property is not unreasonable. But such a percentage might be excessive if the evidence showed a different situation regarding other investments.

The landlords should not be allowed to charge as an operating expense the interest paid on mortgages, or expense in negotiating mortgages. The reason for this is apparent. The landlord is getting a return as rent on his total investment which includes that part represented by the mortgages on the property, which must be paid to save the amount actually advanced.

Applying these rules to the facts in the case at bar we find the net rental much less than ten per cent and, therefore, reasonable.

The judgments are affirmed, with ten dollars costs in each case.

CROPSEY and LAZANSKY, JJ., concur.

Judgments affirmed.