WILLIAM W. RUSSELL & others *vs.* TREASURER AND RECEIVER GENERAL & others.

Suffolk. May 4, 1954. — June 16, 1954.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Rent Control. Housing. Constitutional Law*, Rent control, Housing, Police power, Equal protection of laws, Delegation of powers, Emergency law. *Municipal Corporations*, Rent control. *Statute*, Emergency law.

A recital in the preamble of St. 1953, c. 434, an emergency law, that its purpose was to alleviate a shortage of rental housing causing a serious public emergency was a sufficient statement of the fact of such shortage to conform to the requirement of art. 48 of the Amendments to the Massachusetts Constitution, The Referendum, II, that an emergency law "shall contain a preamble setting forth the facts constituting the emergency." [503–504]

Upon a determination by the Legislature of the existence of a "severe shortage of rental housing in certain areas" of the Commonwealth causing "a serious emergency detrimental to the public peace, health, safety and convenience," the enactment of St. 1953, c. 434, to alleviate such shortage was a proper exercise of the police power. [507]

The Legislature by St. 1953, c. 434, properly delegated to city and town boards the administration of details respecting local matters of the general policy of rent control adopted by enacting the statute. [507]

The exception from rent control under St. 1953, c. 434, of certain newly constructed, changed or converted housing accommodations, vacant accommodations, and those having a monthly rental of more than $150 by § 2 (b) (3) was a classification reasonably adapted to effect the purpose of the statute and did not render it unconstitutional as denying equal protection of laws to owners of controlled accommodations. [508–509]

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on February 2, 1954.

The case was reserved and reported without decision by *Counihan,* J.

*Henry E. Patnaude,* (*Aldo P. Villani & Robert V. Zlotnick* with him,) for the petitioners.

*Hugh Morton,* Assistant Attorney General, for the respondents.

WILLIAMS, J. This is a petition by twenty-five taxable inhabitants of the Commonwealth to restrain the Commonwealth from expending money to reimburse the cities and towns, which have accepted St. 1953, c. 434, forty per cent of the amounts which they have expended for the purposes of this act. G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157.

The respondents are the Treasurer and Receiver General, the temporary State housing rent coördinator, and the comptroller. All respondents have appeared and answered by the Attorney General. G. L. (Ter. Ed.) c. 12, § 3. There is a statement of agreed facts wherein it is stated that the petitioners are taxable inhabitants of the Commonwealth; that they bring their petition under G. L. (Ter. Ed.) c. 29, § 63; that the respondents are respectively the Treasurer and Receiver General, temporary State housing rent coördinator, and comptroller of the Commonwealth; that St. 1953, c. 434,

was approved as an emergency law on June 2, 1953; that certain cities and towns have made expenditures to control rents as authorized by the act; that it is the duty of the temporary State housing rent coördinator to certify such expenditures to the comptroller; and that the Treasurer and Receiver General is obliged to disburse public funds in accordance with the certificate.

The case was reserved and reported without decision to the full court by a single justice of this court upon the petition, the respondents' answer, and the statement of agreed facts.

At issue are the validity of the enactment of St. 1953, c. 434, as an emergency measure and its constitutionality.

The validity of the enactment is questioned on the ground that the preamble does not conform to art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, II, as amended by art. 67 of such Amendments, which reads, so far as here material: "A law declared to be an emergency law shall contain a preamble setting forth the facts constituting the emergency, and shall contain the statement that such law is necessary for the immediate preservation of the public peace, health, safety or convenience." The act is entitled "An Act relative to rent control," and the preamble reads: "Whereas, The deferred operation of this act would tend to defeat its purpose which is, in part, to alleviate the severe shortage of rental housing in certain areas of the commonwealth which shortage has caused a serious emergency detrimental to the public peace, health, safety and convenience, therefore this act is hereby declared to be an emergency law, necessary for the immediate preservation of the public peace, health, welfare, safety and convenience." It contains the required statement that the law is necessary for the immediate preservation of the public peace, health, safety, and convenience, and sets forth as a fact that its purpose is to alleviate the severe shortage of rental housing in certain areas which has caused a serious emergency. Although, technically, it is the purpose of the act which is stated as a fact, the statement amounts to a

declaration that there is a severe shortage of rental housing in certain areas which has caused a serious emergency and that the purpose of the act is to alleviate this shortage. That such is the intended meaning is made plain by reference to § 1 of the act which reads in part: "The general court finds and declares that a serious public emergency exists with respect to the housing of a substantial number of the citizens in certain areas of this commonwealth, which emergency has been created by war, the effects of war and the national emergency which presently confronts our nation, and which has resulted in a substantial shortage of rental housing accommodations." We think the preamble is adequate to validate the act as an emergency measure. See *Prescott* v. *Secretary of the Commonwealth*, 299 Mass. 191, 197. Compare *Payne* v. *Graham*, 118 Maine, 251.

The act continues under the control of the Commonwealth for a limited period those rents previously controlled under Title II of the housing and rent act of 1947 (U. S. C. [1946 ed.] Sup. V, Title 50, Appendix, §§ 1891–1910) which, as to its provisions respecting rent control, expired on July 31, 1953. The instant act provides that in any town or city, which between the date of its passage (June 2, 1953) and June 30, 1954, accepts its provisions by a vote which shall include "a declaration that a substantial shortage of rental housing accommodations exists . . . and that the control of rents therein is necessary in the public interest" (§ 12), a rent board may be established by the local authorities to administer the act (§ 4 [a]) the actions, regulations, and orders of which are subject to judicial review (§ 6). "Forty per cent of the amounts expended by the cities and towns for the purposes of this act with the approval of the rent boards shall be reimbursed by the commonwealth upon approval and certification to the comptroller by the coordinator" (§ 4 [c]). The act shall terminate on June 30, 1954, provided, however, that any city or town may vote to continue its provisions for an additional period of nine months (§ 14). A city or town which has accepted the act may at any time rescind its action (§ 12).

In § 5 it is provided: "(a) Subject to the provisions hereof, no person shall demand, accept or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established therefor by federal rent controls in force immediately preceding the effective date of this act; provided, however, that the city or town rent board shall, by regulation or order, make such individual and general adjustments in such maximum rents with respect to any housing accommodations or any class of housing accommodations as may be necessary to remove hardships or to correct other inequities . . . . (b) The rent board is authorized and directed to remove any or all maximum rents in such city or town or portion thereof or with respect to any class of housing accommodations if in its judgment the need for continuing maximum rents in such city or town or portion thereof or with respect to such class of housing accommodations no longer exists, due to sufficient construction of new housing accommodations or when the demand for rental housing accommodations has been otherwise reasonably met. The rent board may re-establish maximum rents in such city or town or with respect to those housing accommodations referred to in section two (b) (3) (iii) and (iv) if, in its judgment, such action again becomes necessary to carry out the purposes of this act and provided, further, that it finds and declares that a substantial shortage of rental housing accommodations exists in such city or town and that the control of rents therein is necessary in the public interest."

Section 2 (b) provides in part that the following described accommodations are excepted from control: "(3) Any housing accommodations (i) the construction of which was completed on or after February first, nineteen hundred and forty-seven, or which are housing accommodations created by a change from a non-housing to a housing use on or after February first, nineteen hundred and forty-seven, or which are additional housing accommodations created by conversion on or after February first, nineteen hundred and forty-seven; provided, however, that any housing accommoda-

tions resulting from any conversion created on or after April first, nineteen hundred and forty-nine, shall continue to be controlled housing accommodations unless the city or town rent board issues an order decontrolling them, which it shall issue if it finds that the conversion resulted in additional, self-contained family units as defined by regulations issued by it; or (ii) the construction of which was completed on or after February first, nineteen hundred and forty-five, and prior to February first, nineteen hundred and forty-seven, and which between the date of completion and June thirtieth, nineteen hundred and forty-seven, both dates inclusive, at no time were rented, other than to members of the immediate family of the landlord, as housing accommodations; or (iii) which on the effective date of this act are vacant or later become vacant, except as otherwise provided in section five (b); or (iv) which on the effective date of this act had a rental at the gross monthly rate of more than one hundred and fifty dollars; . . . or (5) Any housing accommodation which was not controlled under any provision of any federal rent control law or regulation in effect immediately preceding the effective date of this act; or (6) On or after July thirty-first, nineteen hundred and fifty-three, all housing accommodations in every city and town in the commonwealth except the housing accommodations in those cities and towns which accept the provisions of this act in accordance with section twelve."

It is the contention of the petitioners that the classification of housing accommodations whereby those described in § 2 (b) (3) (i), (ii), (iii), and (iv) are excepted from control is arbitrary and inequitable and deprives owners of controlled housing accommodations "of the due process and equal protection of the laws guaranteed by the Constitutions of the United States and of our Commonwealth." The Federal housing and rent act of 1947, under which the rent controls, which are continued by the instant act, were imposed, was enacted as a war measure. It is settled that it was within the power of Congress to enact it and to provide that in aid of the war prices and rents be controlled to pre-

vent inflation, profiteering, and economic distress. *Bowles* v. *Willingham*, 321 U. S. 503. *Woods* v. *Cloyd W. Miller Co.* 333 U. S. 138. *Schaffer* v. *Leimberg*, 318 Mass. 396, 399. See *Highland* v. *Russell Car & Snow Plow Co.* 279 U. S. 253; *Yakus* v. *United States*, 321 U. S. 414. The war power of Congress did not necessarily end with the cessation of hostilities but continued, to enable that body to take further reasonable measures to relieve the deficit in housing which had been caused by the war. *Woods* v. *Cloyd W. Miller Co.* 333 U. S. 138. Rent control by Congress having now been terminated, it is left to the States to enact such legislation as they deem necessary to relieve any housing shortages that may continue to exist within their respective boundaries. The instant act is predicated on a finding by the Massachusetts Legislature that an emergency now exists in this Commonwealth due to a deficit or shortage in residential housing. For the purpose of this decision we assume that this finding is justified. *Block* v. *Hirsh*, 256 U. S. 135, 154–155. *Woods* v. *Cloyd W. Miller Co.* 333 U. S. 138, 144. *Stockus* v. *Boston Housing Authority*, 304 Mass. 507, 511. In such emergency it is plain that the Legislature in the exercise of its police power can legislate to relieve it. *Block* v. *Hirsh*, 256 U. S. 135. *Marcus Brown Holding Co. Inc.* v. *Feldman*, 256 U. S. 170. *Edgar A. Levy Leasing Co. Inc.* v. *Siegel*, 258 U. S. 242. *Lowell* v. *Boston*, 111 Mass. 454, 467. *Commonwealth* v. *Pear*, 183 Mass. 242, 244–245. *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73, 77. Having adopted a policy of rent control by this emergency legislation it may also delegate to the cities and towns as governmental agencies the administration of its details in respect to matters peculiarly affecting local interests. *Brodbine* v. *Revere*, 182 Mass. 598, 600, 601. *Bradley* v. *Zoning Adjustment Board of Boston*, 255 Mass. 160, 171. *Krupp* v. *Building Commissioner of Newton*, 325 Mass. 686, 690. *Opinion of the Justices*, 286 Mass. 611, 617–618.

The object of the act is to relieve the shortage of residential household accommodations by increasing the number of residential housing units. We are concerned not with

the policy or efficacy of the method which the Legislature has adopted but only with its constitutionality. *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 283. *Nebbia* v. *New York,* 291 U. S. 502, 537–538. Ordinarily a statutory classification is considered arbitrary if not resting upon some ground of difference having a fair and substantial relation to the object of the legislation. *Opinion of the Justices,* 303 Mass. 631, 645, 647–648. Conversely there is no arbitrary discrimination in a classification which is rational in scope and effect and bears some manifest relation to the main object sought to be accomplished. Such classification does not create inequity before the law. *Goodale* v. *County Commissioners of Worcester,* 277 Mass. 144, 147. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 339–341. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 351. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works,* 289 Mass. 149, 200. *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 287. *Nebbia* v. *New York,* 291 U. S. 502.

In our opinion the classification of the housing accommodations which are excepted from control by § 2 (b) (3) (i), (ii), (iii), and (iv) is reasonably adapted to effect the purpose of the act. Subsections (i) and (ii) are substantially similar to provisions of the housing and rent act of 1947, which have been held not to violate the due process clause of the United States Constitution. *Woods* v. *Cloyd W. Miller Co.* 333 U. S. 138, 145. By eliminating rent control over newly constructed, changed, or converted housing they furnish an inducement for additional new construction, change, and conversion and thereby tend to accomplish the result which the act was designed to effect. Subsection (iii) which provides for removal of rent control from vacant housing is a preliminary step to arriving at ultimate complete decontrol. Such decontrol must be effected gradually and it appears sound in principle to relieve from control those housing accommodations which, by reason of being vacant, while under control regulations, indicate in general a lack of need for

their further control. Subsection (iv) makes a distinction between housing accommodations which have a monthly rental value of $150 or less and those having a monthly rental value of over that amount. The Legislature could find that the housing shortage existed principally in housing of relatively low rental value, and determine that control of housing with a rental value of over $150 was unnecessary. *Woods* v. *Cloyd W. Miller Co.* 333 U. S. 138, 145. See *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 287.

The act, considered in its entirety, leads to the conclusion that it establishes a system of rent control which is reasonably calculated to increase the number of residential housing units of the class in which there is the most pronounced shortage and by gradually relieving the existing emergency to promote a return of the housing situation to a more normal basis. Doubtless in the administration of the act there may be inequality of treatment in certain instances as to owners of substantially similar housing properties. In such cases practical relief is afforded through recourse to the local boards which have authority under § 5 (a) and (b) to remove hardships and correct inequities. There is also in § 6 provision for judicial review of actions taken by the boards.

The petitioners have not shown that the act violates any provision of the Constitution of the United States or of this Commonwealth. A final decree may be entered that the petition be dismissed.

*So ordered.*