**KRESS, DUNLAP & LANE, LTD.,** Petitioner

v.

**CARLOS A. DOWNING,**

as Commissioner of Property and Procurement of the Virgin Islands, Respondent

Civil No. 190-1959

District Court of the Virgin Islands

Div. of St. Thomas and St. John

May 15, 1961

*See, also, 193 F. Supp. 874*

DUDLEY, HOFFMAN and McGOWAN, Charlotte Amalie, Virgin Islands, *for petitioner*

RUSSELL B. JOHNSON, Attorney General of the Virgin Islands, *for respondent*

MARIS, *Circuit Judge*

Kress, Dunlap & Lane, Ltd., the owner of the premises located at No. 8 King Street, Frederiksted, St. Croix, seeks relief against an order issued by Carlos A. Downing, Commissioner of Property and Procurement, under the Rent Control Law of the Virgin Islands, 28 V.I.C. § 831 et seq., fixing the maximum rent on the upper floor of its premises at $50.00 a month.[1]

The facts are that the petitioner, Kress, Dunlap & Lane, Ltd., in May 1959, purchased No. 8 King Street, a two-story building, the upper floor of which had been occupied by Amadeo A. Forbes as tenant during the previous year for both residential and business purposes at a monthly rental of $50.00. In July 1959 the tenant was advised that beginning August 1st the monthly rental would be increased to $65.00. Thereupon he wrote the rent control authorities in St. Thomas advising them of the rent increase, stating that nothing had been done to the building since its purchase by the petitioner and inquiring whether petitioner had sought a rent increase. Under the Virgin Islands Code the Rent Control Law is administered and enforced by the Price and Rent Control Officer under the direction and general supervision of the Commissioner of Property and Procurement. 28 V.I.C. § 832. The Price and Rent Control Officer received the tenant's communication and held a hearing. After an investigation of the premises, he issued Rent Control Order No. 22-1959 fixing the maximum rent for the upper floor of the premises at $50.00 per month. He found that no legal basis had been shown entitling the

---

[1] The Commissioner set aside the order insofar as it related to maximum rents fixed for other portions of the premises.

petitioner to a rent increase since he took the view that under the Rent Control Law the rents prevailing in 1947 were chargeable in 1959 except where there had been a major improvement or structural change, as distinguished from repair, replacement, or maintenance, and it appeared that the petitioner's property had not undergone any such improvement or change.

The petitioner appealed to the Commissioner of Property and Procurement, contending that Order No. 22-1959 was invalid. In support of the appeal the petitioner asserted (1) that it had not been afforded proper opportunity by the Price and Rent Control Officer to present relevant facts, (2) that the Price and Rent Control Officer had failed to take into consideration the operating expenses and carrying costs and this constituted a taking of the property without due process of law, (3) that the Price and Rent Control Officer had failed to consider comparable accommodations in fixing the maximum rent, (4) that the freezing of the rent at the 1947 levels without allowance for subsequent increases in operating expenses is unrealistic and constitutes a taking of property without due process of law, and (5) that the emergency which the law was enacted to meet had ceased to exist and, accordingly, the Rent Control Law was no longer enforceable.

After a hearing, the Commissioner found that the petitioner had been given a proper hearing by the Price and Rent Control Officer. He further found that the purchase price of the property was $21,000, subject to a $9,000 encumbrance at 6% interest, the total rents collectible annually were $1,590 and the total estimated annual expenditures, including taxes, interest, fire and liability insurance premiums, janitor service, commission to manager, and estimated repairs, amounted to $1,720. In addition to these expenses and carrying charges, the sum of $708.92 had been spent by the petitioner for repairs to the plumbing,

267

roof, flooring, doors, etc. The Commissioner concluded that neither operating expenses, carrying costs, nor costs of repairs were to be considered in determining whether maximum rents should be increased, the only ground permitted by the law for an increase in rents above those prevailing in 1947 being a substantial major improvement or structural change. The contentions of the petitioner that the freezing of rents at 1947 levels without any allowance for increased expenses of operation was a taking of property without due process of law and that the emergency had ended, were held by the Commissioner to be matters with which he had no power to deal. The Commissioner accordingly affirmed the order of the Price and Rent Control Officer.

Thereupon, the petitioner filed the present petition in this court for review of the Commissioner's order, raising in substance the same contentions which it had made on its appeal to the Commissioner. Before answer, the Commissioner moved for summary judgment which this court granted and a decree was entered dismissing the petition. On appeal by the petitioner the Court of Appeals held that entry of summary judgment was precluded because the petition to this court had presented an issue of fact as to whether the emergency continued to exist within the meaning of 28 V.I.C. § 846. The decree of this court was accordingly reversed and the cause remanded with directions to proceed in accordance with the opinion of the court. 4 V.I. 227, 286 F.2d 212. Subsequently an answer was filed by the Commissioner and the case came on for trial before me. Testimony was taken, briefs were filed and the case is now ready for decision.

Rents have been controlled in St. Croix since March 31, 1955, the rents being frozen at the rental level in force on July 1, 1947. This came about as follows:

In 1941 an emergency in the former Municipality of St.

Thomas and St. John, created by an acute housing shortage, had been declared to exist by an Ordinance of the Municipal Council of St. Thomas and St. John approved June 13, 1941, which regulated the eviction of tenants in cases where unjust and unreasonable rents were being exacted and provided that rents in force on April 1, 1941, plus an increase up to 15% to cover improvements, should be considered just and reasonable. In 1946[2] similar regulation was extended in St. Thomas and St. John to premises rented for business purposes or for the location of superficiary houses, the maximum rents for such properties being fixed at the level of rents in force on January 1, 1945, plus an increase on properties used for business purposes to cover improvements not exceeding 15%.[3] These ordinances were repealed and superseded on December 5, 1947 by the Emergency Rent Act,[4] as amended,[5] which provided that the maximum rent ceilings for premises used for residential or business purposes or on which superficiary houses were constructed should be the rents in force on July 1, 1947. On March 31, 1955, as I have indicated, the provisions of the Emergency Rent Act of St. Thomas and St. John were extended to the Territory as a whole, thus including the Island of St. Croix.[6] The Rent Control Law was codified in the Virgin Islands Code, effective September 1, 1957, as §§ 831–846 of Title 28. Section 846 provided for termination of rent control in the following manner:

[2]Ordinance of the Municipal Council of St. Thomas and St. John, approved March 4, 1946, Bill No. 183.

[3]Improvements were construed to "mean structural changes and not ordinary maintenance and repair as these terms are used in the real estate business."

[4]Act of the Municipal Council of St. Thomas and St. John, approved December 5, 1947, Bill No. 92.

[5]Act of the Municipal Council of St. Thomas and St. John, approved December 22, 1947, Bill No. 171.

[6]Act No. 24, approved March 31, 1955, sec. 13, V.I. Sess. Laws, 1955, p. 39.

"§ 846. Termination of emergency as rendering subchapter ineffective

"The provisions of this subchapter shall remain in force and effect only for the duration of the public emergency with respect to the shortage of housing and business accommodations declared to exist by Ordinance of the Municipal Council of Saint Thomas and Saint John approved December 5, 1947 (Bill No. 92), which ordinance was made applicable throughout the Virgin Islands by section 13 of the Act of the Legislature approved March 31, 1955, Number 24. Upon declaration by Resolution or Act of the Legislature that such emergency has ceased to exist, the provisions of this subchapter shall have no further application."[7]

██ ██ It is well settled that when a public emergency is brought about by a shortage in housing or business accommodations the legislature in the exercise of its police power may regulate the rents charged by landlords for properties of that kind in the rental market.[8] A declaration by a legis-

[7] The public emergency referred to in § 846, which was declared by the 1947 Act to exist, was described in the preamble to that Act as follows:

"WHEREAS, An acute building shortage exists which has given rise to a public emergency, resulting in undue hardship on tenants and lawful occupants of premises; and,

"WHEREAS, It has been found that abnormal conditions have aggravated the situation with regard to housing accommodations existing in the Municipality and have led or will lead to profiteering and other speculative practices by some owners of housing and business accommodations and have rendered or will render ineffective the normal operations of a free market in said accommodations and are making it increasingly difficult for residents to obtain such accommodations; and

"WHEREAS, It is the purpose of this Act and the policy of the Municipal Council, during the existing emergency, to prevent undue rent increases, unreasonable evictions, and any other practices relating to housing and business accommodations in the Municipality which may tend to increase the cost of living." 28 V.I.C. § 846, Revision Note.

[8] Block v. Hirsch, 1921, 256 U.S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A.L.R. 165; Marcus Brown Co. v. Feldman, 1921, 256 U.S. 170, 41 S. Ct. 465, 65 L. Ed. 877; Levy Leasing Co. v. Siegel, 1922, 258 U.S. 242, 42 S. Ct. 289, 66 L. Ed. 595; Home Bldg. & L. Assn. v. Blaisdell, 1934, 290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S. Ct. 641, 88 L. Ed. 892; Russell v. Treasurer and Receiver General, 1954, 331 Mass. 501, 120 N.E.2d 388; Rivera v. R. Cobian Chinea & Co., 1 Cir. 1950, 181 F.2d 974, 977.

lature concerning public conditions that by necessity and in the performance of its duty it must know is entitled to great respect. Accordingly, it has been held that it must be assumed that the emergency declared by the legislature did exist when it was declared.[9] It is not suggested that the Legislature of the Virgin Islands lacked the power to enact legislation to stabilize rentals during an emergency.[10] Accordingly I must assume that a public emergency declared by the legislative authorities to exist because of an acute shortage of housing and business accommodations did in fact exist in St. Thomas and St. John on December 5, 1947, when the Emergency Rent Act of St. Thomas and St. John became effective, and in St. Croix on March 31, 1955, when the Act was extended to that island.

 This brings me to the question whether the emergency which justified the enactment of rent controls has come to an end so that such controls may no longer be applied consistently with the right of a landlord guaranteed by the Fifth Amendment to the Constitution and by section 3 of the [1954] Revised Organic Act of the Virgin Islands, 48 U.S.C.A. § 1561, prec. 1 V.I.C., not to be deprived of his property without due process of law. For the police power under which rent control may be imposed during an emergency period is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably.[11] In this connection the Supreme Court has said that "The regulation is put and justified only as a temporary measure . . . A limit in time, to tide over a passing trouble, well may justify

[9]Block v. Hirsch, 1921, 256 U.S. 135, 154-155, 41 S. Ct. 458, 65 L. Ed. 865, 16 A.L.R. 165, 171.

[10]See Government of the Virgin Islands v. Massac, 3 Cir. 1960, 4 V.I. 185, 277 F.2d 660, 663.

[11]Nebbia v. New York, 1934, 291 U.S. 502, 539, 54 S. Ct. 505, 78 L. Ed. 940; Nashville, C. & St. L. Ry. v. Walters, 1935, 294 U.S. 405, 415, 55 S. Ct. 486, 79 L. Ed. 949; Rivera v. R. Cobian Chinea & Co., 1 Cir. 1950, 181 F.2d 974, 978; Mora v. Mejias, 1 Cir. 1955, 223 F.2d 814, 816.

a law that could not be upheld as a permanent change". Block v. Hirsch, 1921, 256 U.S. 135, 157, 41 S. Ct. 458, 65 L. Ed. 865, 16 A.L.R. 165, 171. And a law based upon the existence of an emergency may cease to operate if the emergency ceases or the facts change even though the statute was valid when enacted, it being always open to the court to determine whether the emergency, upon which the continued operation of the law depends, still exists.[12]

■ ■ I turn then to consider the facts as developed by the evidence in this case. The testimony makes it very clear that the rented accommodations in the Territory which are presently subject to the Rent Control Law fall into four main categories namely, low rental housing accommodations, comprising those renting for less than $75 per month; medium rental housing accommodations, comprising those with rentals of $75 to $175 per month; high rental housing accommodations, comprising those renting for more than $175 per month, and business accommodations. Moreover it is clear that such classifications may be made for the purposes of rent control and the validity of continued rent control determined with respect to each category separately.[13]

■ With respect to the high rental or luxury type of housing accommodations the evidence is clear that the emergency resulting from an acute shortage in such accommodations no longer exists, and I so find as a fact.

With respect to medium and low rental housing accommodations the evidence is conflicting, but I find from the

[12]Chastleton Corp. v. Sinclair, 1924, 264 U.S. 543, 547–548, 44 S. Ct. 405, 68 L. Ed. 841; Home Bldg. & L. Assn. v. Blaisdell, 1934, 290 U.S. 398, 442, 54 S. Ct. 231, 78 L. Ed. 413; Nashville, C. & St. L. Ry. v. Walters, 1935, 294 U.S. 405, 415, 55 S. Ct. 486, 79 L. Ed. 949; U.S. v. Carolene Products Co., 1938, 304 U.S. 144, 153, 58 S. Ct. 778, 82 L. Ed. 1234.

[13]Woods v. Miller Co., 1948, 333 U.S. 138, 68 S. Ct. 421, 92 L. Ed. 596; Taylor v. Brown, Em. App. 1943, 137 F.2d 654, 659–660, cert. den. 320 U.S. 787, 64 S. Ct. 194, 88 L. Ed. 473; Gregory v. Barr, Em. App. 1953, 203 F.2d 364.

preponderance of the evidence that the acute shortage in housing accommodations in these categories which formerly existed has not been alleviated by new construction or otherwise to a point where it can fairly be said that the emergency resulting therefrom has ended. I accordingly find as a fact that the public emergency heretofore declared by the legislative authorities continues to exist in the Territory with respect to medium and low rental housing accommodations.

The evidence indicates that a different situation exists with respect to rented business accommodations in the Territory. The number of commercial and industrial enterprises in the Territory has increased greatly during recent years with the developing economy of the Virgin Islands. It was testified that in the past twelve years the annual receipts from tourist business have increased from $1,000,000 to $25,000,000. Geographical considerations limit the available space which is suitable for commercial use and keen competition has arisen for business space, particularly on the part of those business enterprises which cater to the tourist trade and which desire the choicest locations for attracting that business, such as Queen [Main] Street in Queen's Quarter of the town of Charlotte Amalie, the lower parts of King and Company Streets and the wharf area in the town of Christiansted and Strand Street in the town of Frederiksted. I am satisfied, however, from the evidence that while the competition for these choice locations is keen and it is difficult for newcomers to acquire them, the competition is what is normally to be expected in growing areas of such limited size in which business is rapidly increasing.

The evidence is uncontradicted that rent control is very largely unenforced in the business rental field in the Territory. It is likewise uncontradicted that the existing rent level for business properties, although much higher than in former years, particularly for the choicest locations, is

273

not exorbitant in the sense that the rents are providing more than a fair return to landlords upon the present value of their properties. Obviously in the case of business properties the amount of rent which a tenant can pay and still carry on business at a profit is a definite limiting factor. The values of real estate in the Territory have greatly increased since 1947, and even since 1955, and it is doubtless in recognition of this fact that no serious effort is presently being made by tenants to enforce in the business field the rent levels of 1947 as the Rent Control Law requires. This also is persuasive evidence that an emergency does not now exist. I find as a fact that the public emergency resulting from a shortage of business accommodations no longer exists in the Territory.

█ It follows from the facts, as I have found them, that sections 831 to 846, both inclusive, of Title 28 of the Virgin Islands Code, comprising the Territorial Rent Control Law, no longer can have any application to housing accommodations which rent for more that $175 per month or to business accommodations.

The rental accommodation involved in this suit, however, includes housing as well as business use and it rents for less than $175 per month. Accordingly, insofar as it involves housing use, I must consider whether Rent Control Order No. 22-1959 fixing the rental at $50 per month can be sustained. It is not disputed that in making the order the Price and Rent Control Officer and the Commissioner on appeal declined to give any consideration to the petitioner's expenses in operating the property or to the question whether the rental fixed by the order was fair and equitable. They both took the view that the only basis for allowing an increase in the maximum rent would be major improvements or structural changes and, admittedly, these had not been made.

The petitioner strongly argues that the Rent Control Law

is wholly invalid because it fixes rent ceilings at the levels of July 1, 1947 and makes no provision whatever for the adjustment of such ceilings because of increased expenses of operation or increased values of rented property and accordingly does not assure to landlords a reasonable return upon the fair value of their properties. If this were true, there would be much force in the petitioner's argument.

For surely a law would have to be held to be confiscatory, and, therefore, invalid which fixed maximum rents at 1947 levels without any provision for their upward adjustment to take account of increased costs and increased property values in an area such as the Virgin Islands where there has been such a tremendous rise in the level of both costs and property values since 1947. Rent control during a public emergency is valid if it provides for a fair and reasonable rent. Block v. Hirsch, 1921, 256 U.S. 135, 157–158, 41 S. Ct. 458, 65 L. Ed. 865, 16 A.L.R. 165. Rent control laws are not designed to penalize landlords or to favor tenants but to meet the emergency. Such laws should accomplish a two-fold purpose: protect a tenant from unjust, unreasonable and oppressive rents and grant to a landlord a fair and reasonable return.

It is a fundamental canon of construction that I must construe the law, if possible, so as to render it valid.[14] So construed, I think that the law does require the Price and Rent Control Officer, at least upon the application of a tenant for a reduction in rent,[15] to fix a maximum rent which will provide the landlord with a return upon the value of his property which is fair and equitable in the light of the reasonable expenses of maintenance and operation

[14]Arkansas Gas Co. v. Railroad Comm., 1923, 261 U.S. 379, 383, 43 S. Ct. 387, 67 L. Ed. 705.

[15]The present proceeding has been treated by both parties as such an application under 28 V.I.C. § 836(b).

of the property. The pertinent provisions of Title 28 of the Virgin Islands Code, embodying the Rent Control Law, are as follows:

"§ 834. Maximum rent ceilings

"The maximum rent ceilings in the Virgin Islands shall be as follows—

"(1) for housing accommodations, rents in force and effect on July 1, 1947;

"(2) real property used for business purposes or on which superficiary houses are constructed, rents in force and effect on July 1, 1947;

"(3) for newly constructed housing or business accommodations first rented on and after the aforesaid maximum rent date, or accommodations changed on or after such date, so as to result in an increase or decrease of the number of dwelling or business units in such accommodations, the first rent for such accommodations after the change or maximum rent date as the case may be, but in no event more than the maximum rent provided for such accommodations by an order of the Price and Rent Control Officer upon application properly made; and

"(4) for housing accommodations or real property used for business purposes or on which superficiary houses are constructed, not rented on July 1, 1947, and not covered by clause (3) of this section, the last rent in force and effect prior to July 1, 1947.

\* \* \*

"§ 836. Petitions for adjustment of maximum rent ceilings

"(a) Any landlord may petition the Price and Rent Control Officer to adjust the maximum rent ceiling applicable to his accommodations to compensate for a substantial major capital improvement or structural change

as distinguished from repair, replacement, or maintenance.

"(b) Any tenant may petition the Price and Rent Control Officer to adjust the maximum rent ceiling applicable to his premises on the ground that unduly high rents are being charged or that the maximum rent ceiling permits the receipt of rent substantially in excess of the prevailing rent for equivalent accommodations.

"§ 837. Consideration of petitions; hearings; orders

"(a) Any petition filed under section 836 of this title shall be promptly considered by the Price and Rent Control Officer. Pursuant thereto, he shall hold a hearing, which shall be conducted in accordance with regulations promulgated under clause (1) of section 833 of this title. At this hearing, the landlord and tenant shall be given an opportunity to be heard or to file written statements, with due regard to be given to the utility and relevance of the information offered and the need for expedition.

"(b) After the hearing referred to in subsection (a) of this section, the Price and Rent Control Officer shall make findings of fact and issue an appropriate order.

"If the order is favorable to the landlord pursuant to a petition filed by him under subsection (a) of section 836 of this title, it shall provide for an adjustment of the maximum rent ceiling in such manner or amount as the Price and Rent Control Officer deems proper to compensate the landlord for the capital improvement or structural change referred to in such subsection, in whole or in part, if the Price and Rent Control Officer finds the adjustment necessary or appropriate to carry out the purposes of this subchapter; but no such adjusted maximum ceiling shall permit the receipt of rent in excess of the rent generally prevailing for comparable accommoda-

tions as determined by the Price and Rent Control Officer.

"If the order is favorable to the tenant pursuant to a petition filed under subsection (b) of section 836 of this title, it shall, as the case may be, fix a new maximum rent ceiling which shall be substantially equal to that fixed for other properties of like kind and use, or provide for an adjustment of the existing maximum rent ceiling in such manner or amount as, in the judgment of the Price and Rent Control Officer, will effectuate the purposes of this subchapter and provide a fair and reasonable rent for the premises.

"Copies of the findings and order of the Price and Rent Control Officer shall be served upon the parties to the proceeding.

"(c) Any adjusted maximum rent ceiling ordered under this section shall be the maximum rent ceiling for the accommodations subject thereto, except that, if the order of adjustment is stayed or set aside by the Commissioner of Property and Procurement or the court, the maximum rent ceilings theretofore applicable to such accommodations under this subchapter shall remain in full force and effect.

\* \* \*

"§ 844. Penalties

"(a) If any landlord receives rent in violation of any provisions of this subchapter, or of any regulation or order thereunder prescribing a rent ceiling, the tenant paying such rent or the Price and Rent Control Officer on behalf of such tenant may bring an action for double the amount by which the rent paid exceeds the applicable rent ceiling or for $50 whichever is greater, plus attorney's fees and costs as determined by the court.

"(b) Whoever wilfully violates any provision of this

subchapter or any regulation, order or requirement thereunder, or wilfully commits any acts with intent to evade this subchapter or any regulation or order or requirement thereunder, shall be fined not more than $100. Any person against whom a judgment has been entered under subchapter (a) of this section shall not be subject to prosecution under this subsection.

"(c) No person shall be held liable for damages or penalties in any court on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provisions of this subchapter or any regulation or order. The Price and Rent Control Officer may intervene in any action wherein a party relies for ground of relief or defense upon this subchapter or any regulation, order, or requirement thereunder."

It will be observed that section 836(b) authorizes a tenant to petition for the adjustment of a maximum rent ceiling and that the third paragraph of section 837 (b) provides that in case of favorable action upon such a tenant's petition the order of the Price and Rent Control Officer shall fix a rent substantially equal to that fixed for other properties of like kind and use or in such amount as will effectuate the purposes of the law and "provide a fair and reasonable rent for the premises". While the language of this paragraph, in common with that of the law generally, is very far from clear, in order to render it valid it must be construed to require that any rent order made under the paragraph in question is to be subject to the final clause of the paragraph that it must provide a fair and reasonable rent for the premises. What constitutes a fair and reasonable rent is to be determined by considering many factors, no one of which is conclusive. An excellent discussion of the subject is contained in the opinion of the Supreme Court of New York construing the rent control law of that State in Hirsch v. Weiner, 1921, 116 Misc. 312, 190 N.Y.S. 111,

116-117, from which I quote the following:

" . . . We think the sensible way to determine these questions is as follows:

"(1) Determine the present fair market value of the premises. This may be done by offering opinion evidence as to both fee and rental value (see Graeber v. Nichols, 190 N.Y. Supp. 198, decided by this court on December 30, 1920), or by introducing other competent evidence.

"(2) Determine the gross rentals demanded by the landlord.

"(3) Determine the allowable operating expenses for the past year. These ordinarily consist of payments for taxes, water rates, insurance, janitor's services, necessary legal expenses made by the landlord incidental to maintaining his right to possession, and necessary expenses actually paid out for collecting rents; also payments for necessary supplies incident to the use of the premises, such as coal, gas and electricity, and also necessary current repairs for the year. Allowance should also be made for loss of rents by reason of vacancies or tenant failing to pay. Allowance for annual depreciation, if established by the proof, should be made upon the fair market value of the buildings.

"(4) Deduct from the gross rentals the operating expenses, and this will give the net rental.

"(5) If this net rental does not exceed 10 per cent. of the present value of the property, then the rent demanded is not unreasonable. The reasonableness of a rent charge may vary under changing financial conditions. Upon the proof in this record, showing the return upon other well-recognized and generally accepted forms of investment, we think that 10 per cent. as a net return to an owner of rental property is not unreasonable. But such a percentage might be excessive, if the evidence

showed a different situation regarding other investments."

Turning for the moment to the facts of the present case, the testimony indicates that in the Virgin Islands a net return to the owner of real property in the order of 6% to 8% per annum is regarded as reasonable. Returning to Hirsch v. Weiner, the court further said:

"The landlords should not be allowed to charge as an operating expense the interest paid on mortgages, or expense in negotiating mortgages. The reason for this is apparent. The landlord is getting a return as rent on his total investment which includes that part represented by the mortgages on the property, which must be paid to save the amount actually advanced."

The rules thus set out by the Supreme Court of New York in Hirsch v. Weiner were approved and followed by the Court of Appeals for the District of Columbia when construing the District of Columbia Rent Law in Karrick v. Cantrill, 1921, 51 App. D.C. 176, 277 F. 578. The Court in that case said, 277 F. 578, 580–583:

"The first question to be considered is whether the rates fixed will give defendant Karrick a reasonable return on the value of the specific property affected by the order of the commission. While the law creating the rent commission undertakes to limit the appellate court to a review of questions of law, if it is suggested that the rental rates fixed are such that they will result in confiscation, it then becomes the duty of the court, for the proper determination of that issue, to review the proceedings had before the commission, both as to law and fact. On this point, defendant cannot be deprived of a judicial investigation; otherwise, he would not be accorded due process of law.

\* \* \*

"It is important to determine the elements to be considered by the commission in fixing rental rates. The first thing, of course, is to ascertain the fair market value of the property at the time of fixing the rates. As the court, construing a similar statute in New York, said in Hirsch v. Weiner (Sup.) 190 N.Y. Supp. 111 . . . :

" 'We know no other logical method for determining rental value than to take the present market value of the property, regardless of its encumbrances as one of the factors. What the owner paid for it may be some evidence of its present value, or it may not be, depending upon the time of, and the circumstances surrounding, its purchase.'

"The statute here involved is analogous to statutes providing for the fixing of rates for public utilities. The statutes, and the decisions in the absence of express statutes, provide that the basis for the fixing of rates must be the fair value of the property in use at the time the valuation is made.

"The commission, instead of inquiring into the market value of the Monmouth at the date of the investigation, took as a basis the value of the ground, plus the cost of constructing the building. Proof of the cost of the building, like proof of the purchase price, may or may not be an important factor in determining market value. This will depend upon the circumstances of each particular case. In determining the justice of the finding in the present case, we will have to adhere to the method of ascertaining value used by the commission, which, in the present case, since the building was new, may be considered as approximately a fair basis upon which to establish market value. It is, however, an improper method, and should not be employed in any future case. In no

case is the question of incumbrance to be considered. On this point we adopt the reasoning of the New York court in Hirsch v. Weiner, supra.

"From the order and the record it is impossible to ascertain the exact basis upon which the rates were fixed on the 76 apartments considered. From the trend of the evidence, it is apparent, however, that the rates were based upon the entire income derived from the building. This was error. While the commission, on its own motion, had power to fix rates upon the entire building, it did not do so, but fixed rates on 76 apartments based upon the total income and value of the property. This is a false basis. The rates should be based upon the value of the 76 apartments in the proportion which their value bears to the value of the entire property. A moment's reflection will demonstrate the injustice of the course pursued by the commission. If rates were to be fixed on but a few apartments in a large building on the theory followed by the commission, it might well be that the rents received on the portion of the building not affected would be sufficient to forbid any allowance whatever on the small portion under consideration. If the rates were fixed for the benefit of the tenants first applying to the commission for relief on the basis of the total income, this would prevent a reduction of the rents of other tenants in the same building subsequently applying.

" . . . The only proper basis would be to ascertain the value of the apartment from its proportionate relation to the value of the entire property, and fix the rent so as to give the owner a fair income on the value so found, regardless of the rents obtaining in other parts of the building.

\* \* \*

"Coming now to what would be a fair rate, the New York court found that the landlord should have a net

283

income from the rental of 10 per cent. of the value of the leased property. A rate that will avoid the charge of confiscation must, of necessity, depend more or less upon the facts in each particular case. In Willcox v. Consolidated Gas Co., 212 U.S. 19, 49 [29 S. Ct. 192, 53 L. Ed. 382] . . . the court affirmed the holding of the New York court:

" 'That a rate which would permit a return of 6 per cent. would be enough to avoid the charge of confiscation, and for the reason that a return of such an amount was the return ordinarily sought and obtained on investments of that degree of safety in the city of New York.'

\* \* \*

"Considering, therefore, the hazards of the business, the value of money at the present time, and the prevailing rates of interest in the District of Columbia, we think that, if the net income from the rental falls below 6 per cent. of the value of the leased property, it should be treated as confiscatory. This rate, however, must be clear of the ordinary expenses. The New York court, supra, on the matter of the allowance of expenses, announced the following rule, which we approve as just and equitable:

" 'It is obvious that expenses for taxes, insurance, janitor services, repairs, gas and electricity, should be allowed an owner in calculating what gross income should be allowed. We think it is established in this case, as well as in other cases before us, that an annual charge for depreciation on the value of the buildings at the time for which rent is sought should be allowed. The great weight of evidence is that an annual charge of 2 per cent. per year for depreciation on the value of the buildings is fair. The federal and state governments allow such depreciation in the circulation of income tax. There is also judicial authority for some allowance for deprecia-

284

tion. Schwartz v. Deutsch, 187 N.Y. Supp. 521. When vacancies are proven allowance should also be made for failure to rent by reason thereof. It also appeared in the evidence that the landlords had paid or obligated themselves to pay for repairs made to a boiler on the premises. Two sections of the boiler had become defective and were replaced by the landlords at an expense of $575. There was also included in the repair account a new floor on the roof at a cost of $400, new electric wiring, $773, awnings and window shades, $45, and new plumbing, $925. Appellant claims that the items for boiler, awnings and window shades and new plumbing should be distributable against future earnings for "a period of years", that the item for new floor should be considered "a replacement chargeable against depreciation reserve," and that the item for electric wiring should be considered an addition to investment and capitalized. We think all of these items were properly allowed by the court below as current repairs. There are of course instances where buildings are largely remodeled and rebuilt where the improvements should be charged to increase of capital, but the items here for review are not of that character. Nor is the court impressed with the argument that repairs should be spread over a period of years and charged against future income. If that were so repairs made in the past should be brought forward and charged to current income.'

"It follows from this analysis that, where new construction is installed to replace parts of the structure which have worn out or become defective, it belongs under the general head of repairs.

"In ascertaining a reasonable rate in any case, the commission should first determine the fair market value of the property. In doing this, it may consider original cost, as well as cost of reproduction; also, rental value

may be considered. These are all elements to be considered; none of which, or all combined, is necessarily conclusive. Second, it should determine the gross rentals demanded by the landlord. Third, it should compute the operating expenses, to be ascertained as herein outlined, and deduct the gross expense from the gross rental. This will give the net rental, from which a percentage of income can be computed on the fair market value of the property."[16]

 I am satisfied that the criteria and procedure for determining a fair and reasonable rent suggested in these cases are equally applicable to the Rent Control Law of the Virgin Islands and I adopt them for the purposes of this case. I accordingly conclude that the Rent Control Law, construed so as to uphold its validity, makes it the duty of the Price and Rent Control Officer in the present case to fix a maximum rent for that portion of the upper floor of the premises in question which is devoted to housing use which will provide the petitioner with a fair and reasonable return upon so much of the present fair value of the petitioner's property as is properly allocable to that part of the premises. In making the determination the present fair value of the premises must be determined and an appropriate part thereof allocated to the housing portion of the accommodation here involved. Likewise the expenses of operating and maintaining the property in an amount determined to be reasonable, but not the mortgage interest claimed by the petitioner, must be considered and similarly allocated since they directly bear upon the amount of net return which the maximum rent ultimately fixed will provide the petitioner.

 The petitioner may, of course, treat the entire

[16]See also Olin J. Stephens, Inc. v. American Real Estate Co., D.C. N.Y. 1921, 279 F. 435; Kennedy Bros. v. Sinclair, C.A.D.C. 1923, 287 F. 972; Lubin v. Finkelstein, 1948, 82 N.Y.S. 2d 329.

upper floor of its premises as primarily a housing accommodation but permit the tenant to make concurrent business use of the housing space, in which case the maximum rent to be fixed by the Price and Rent Control Officer would necessarily relate to the use by the tenant of the entire floor for housing as well as concurrent business purposes and no additional rent would be collectible with respect to such concurrent business use of the housing space. If, however, the petitioner should elect to divide the area of the upper floor into space to be leased for housing purposes and other space to be leased solely for business purposes the maximum rent fixed by the Price and Rent Control Officer will relate only to the housing space and will be computed upon an appropriate allocation to that space only of the various factors which I have indicated must be considered in determining a fair and reasonable rent. In that event the petitioner will be entitled, of course, to charge for the space definitely allocated to be used solely for business purposes an additional sum by way of rental which will not be subject to rent control but merely to bargaining between the landlord and the tenant desiring to use such business space.

It follows from what has been said that Rent Order No. 22-1959 must be set aside and that the cause must be remanded to the Price and Rent Control Officer for further proceedings.

 While it happened that in this instance the matter came before the Price and Rent Control Officer on the application of the tenant and was therefore controlled by the provisions of the third paragraph of section 837(b), it may not be amiss to point out that the Rent Control Law does not specifically impose the same standard of a fair and reasonable maximum rent in the case of applications by landlords made under section 836(a) to adjust upward the ceiling rents applicable to their accommodations. A literal reading of the second paragraph of section 837(b), which

is the paragraph relating to landlord's applications, would seem to indicate that rent adjustments at the instance of landlords are to be limited solely to compensation for capital improvements and structural changes and may not be made to compensate for increased cost of maintenance and operation or increased value of the rented properties. Unless these statutory provisions are to be construed by the courts or amended by the Legislature so as to authorize the fixing of a rent which is fair and reasonable to both landlord and tenant under all the circumstances of each case, they would seem plainly to be invalid as depriving the landlord of the fair value of his property without due process of law. Moreover thus construed they would appear to render the law arbitrary and capricious in operation. For by charging a higher rent without permission a landlord might secure the fixing of a fair and reasonable rent on the tenant's application for a reduction which he could not secure by making direct application himself. Enough has been said, I think, to indicate how urgently the Rent Control Law of the Virgin Islands needs amendment to bring it into line with constitutional requirements and the reality of economic conditions existing in the Territory.

A judgment will be entered setting aside Rent Order No. 22-1959 and remanding the cause to the Price and Rent Control Officer with directions, after hearing and investigation, to fix a maximum rent for the portion of the upper floor of No. 8 King Street, Frederiksted, which is devoted to housing use (or for all of such floor if it is all to be devoted to housing use combined with concurrent business use of portions of the housing space) which maximum rent will be fair and reasonable and in conformity with law.