**FLOVILLE MARCELLY, Plaintiff**

**v.**

**MICHAEL MOHAN and LAURA MOHAN, Defendants**

Civil No. 129/1979

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 17, 1979

WINSTON S. TAYLOR, ESQ., St. Thomas, V.I., *for plaintiff*

LAURA GISOLFI GILBERT, ESQ., Legal Services of the Virgin Islands, St. Thomas, V.I., *for defendants*

FEUERZEIG, *Judge*

### MEMORANDUM OPINION

This case requires the court to determine the validity of an increase in rent agreed to by a landlord and tenant without the approval of the rent control officer for property governed by the Virgin Islands rent control law.[1]

---

[1] 28 V.I.C. §§ 831–846.

Before the court is defendant Laura Mohan's motion for summary judgment.[2] The undisputed facts are that the plaintiff, Floville Marcelly, owns the premises known as No. 7 First Avenue, Estate Thomas, St. Thomas, Virgin Islands. Defendants, Michael and Laura Mohan, in 1971 rented Apartment C of those premises for $155 per month, which brought it under the jurisdiction of the rent control law. Kress, Dunlap and Lane, Ltd. v. Downing, 4 V.I. 261, 193 F.Supp. 874 (D.V.I. 1961). The rent was paid to a Mr. Carr until 1974, at which time the Mohans began paying rent directly to the plaintiff. The rent was increased on September 1, 1976, to $200 per month, which increase was not authorized by the rent control officer as required by 28 V.I.C. § 835 and § 836.

The 1976 rent increase was negotiated by Mr. Mohan and the plaintiff. Laura Mohan did not discuss the rent increase with the plaintiff, nor did she know of the existence of any rent control law at the time of the increase. In fact, she only learned of the rent control law in March of 1979, when she consulted Legal Services of the Virgin Islands after being served with a complaint for past due rent and eviction. Her testimony was that she did not know "that there was any way to avoid paying the rent increase other than moving."

Although Laura Mohan received no written notice of the rent increase from the plaintiff, it is her belief that her husband was given oral notice. Mrs. Mohan also stated that she was of the belief that Mr. Mohan had no knowledge that he could have "acted to avoid the rent increase."

The plaintiff, however, by affidavit and testimony takes the position that he and Mr. Mohan discussed the rent increase in August of 1976 and that the defendants, by Mr.

---

[2] By stipulation of the parties, testimony was taken to supplement the memoranda of law and affidavits previously filed with the court. Counsel also were requested to submit supplemental memoranda and affidavits, which now have been filed.

Mohan, agreed to a rent increase because they had occupied the premises since 1971 at the original monthly rental of $155. The plaintiff further states that he and Michael Mohan agreed that the fair rental value of the property at the time of the negotiated rent increase was $200 per month. Plaintiff, however, also testified that he told Mr. Mohan words to the effect that "if you don't want to pay it, it is up to you to move out" and that he never received any complaints from either of the defendants regarding the increase.[3]

Plaintiff on October 11, 1978, gave the defendants written notice to quit the premises because of the defendants' failure to pay rent since August of 1978. The plaintiff did not, however, obtain a certificate of eviction from the rent control officer before filing this action for debt and eviction. As a result, Laura Mohan has filed her motion for summary judgment contending that the court lacks jurisdiction because of the failure of the plaintiff to seek a certificate of eviction. She further contends the plaintiff is not entitled to relief because he did not obtain authorization for the 1976 rent increase in compliance with the rent control law.

Laura Mohan argues that because the apartment she rents from plaintiff is subject to the rent control law, the plaintiff is required to obtain a certificate of eviction from the rent control officer before he may maintain this action. Having not obtained the certificate, she argues that the court lacks subject matter jurisdiction to entertain plaintiff's eviction action. She relies on 28 V.I.R.&R. § 833–6(c).[4]

---

[3] Michael Mohan has not appeared nor answered. In addition, it was stated that Mrs. Mohan has not seen Mr. Mohan for the last few years.

[4] Title 28 V.I.R.&R. § 833–6(c) provides:

A certificate of eviction from the Price and Rent Control Officer permitting the landlord to pursue his remedies at law at the expiration of the waiting period specified in this subsection shall be required in all cases

■ Assuming arguendo that the apartment is subject to the rent control law, the court agrees that 28 V.I.R.&R. § 833–6(c) requires the plaintiff to obtain a certificate of eviction from the price and rent control officer before filing suit for eviction. The requirement of 28 V.I.R.&R. § 833–6(c) is not, however, jurisdictional. See Altona Corporation v. Lillian Smith, 16 V.I. 492 (Terr. Ct. 1979). Nevertheless, failure to obtain a certificate of eviction before filing suit is a good defense to an eviction action. Consequently, if the subject premises are covered by the rent control law, the court must grant defendant's motion for summary judgment and dismiss the eviction action.

The defendant argues that the rent control law applies to accommodations for which the maximum rent is $175 per month or less, Kress, Dunlap and Lane, Ltd. v. Downing, supra, and that plaintiff's apartment was subject to rent control in September 1976 because the maximum rent at that time was $155 per month.[5] As property subject to

after careful inquiry to determine the good faith of the landlord and that the eviction would not be inconsistent with the purposes of this section.

Certificates issued pursuant to this section shall authorize the landlord to commence proceedings to remove or evict the tenant at the expiration of three months from the date of issuance of the certificate of eviction by the Price and Rent Control Officer. Where the Price and Rent Control Officer finds that equivalent accommodations are available for rent into which the tenant can move without substantial hardship or loss, or that undue hardship would result to the landlord, a certificate may be issued and may authorize the landlord to pursue his remedies for removal or eviction of the tenant at the expiration of a period shorter than such waiting period.

[5] The maximum rent for rent control accommodations is defined at 28 V.I.C. § 834, which provides:

The maximum rent ceilings in the Virgin Islands shall be as follows:

(1) for housing accommodations, rents in force and effect on July 1, 1947;

. . .

(3) for newly constructed housing or business accommodations first rented on and after the aforesaid maximum rent date, or accommodations changed on or after such date, so as to result in an increase or decrease of the number of dwelling or business units in such accommodations, the first rent for such accommodations after the change or maximum rent date as the case may be, but in no event more than the maximum rent provided for such accommodations by an order of the Rent Control Officer upon application properly made; . . .

Neither party challenges the validity of the maximum rent of $155 a month for the subject premises as of 1971.

the rent control law, the defendant argues that the maximum rent could be increased only with the approval of the rent control officer. 28 V.I.C. §§ 836, 837, 28 V.I.R.&R. § 833–3(a). It being conceded that the plaintiff did not obtain that approval, the defendant maintains that the rent increase to $200 a month in September 1976 was illegal. Consequently, she argues that the rent remains at $155 per month and that the premises still are subject to the rent control law.

Plaintiff, on the other hand, argues that the defendants waived their rights under the rent control law when they consented to the September 1976 increase. Assuming arguendo that the statutory rent control rights can be waived, the court cannot find that there was a knowing and intelligent waiver.

It is well established that a "waiver" is an intentional relinquishment of a known right or privilege. Fay v. Noia, 372 U.S. 391 (1962). To constitute a waiver of a legal right a party must have knowledge of such right and an evident purpose to surrender it. First National Bank of Milford v. Department of Banking, 4 Pa. Commw. 168, 286 A.2d 480, 482 (1972). Furthermore, relinquishment of the right must be voluntary. Schmidt v. Interstate Federal Savings & Loan Association, 74 F.R.D. 423 (D.D.C. 1977); United States v. Procter & Gamble Co., 25 F.R.D. 485 (D.N.J. 1960); see Virgin Islands National Bank v. Tropical Ventures, Inc., 9 V.I. 429, 258 F.Supp. 1203 (D.V.I. 1973).

Nothing in the record supports the contention that either of the defendants had knowledge of their legal rights under the rent control law, let alone an evident purpose to surrender such rights. Indeed, Laura Mohan's affidavits are to the contrary, and the plaintiff does not challenge those affidavits. Nor does he assert that either defendant had knowledge of his or her rights under the rent control law.

Instead, he argues that defendants' waiver was voluntary and intelligent, and was based on a "full and fair discussion." However, his own account of the rent increase discussion with Michael Mohan contains absolutely no mention of the defendants' rights under the rent control law. Moreover, by plaintiff's own testimony he told Mr. Mohan, "if you don't want to stay, it's up to you to move out." Consequently, the court believes it is rather audacious for the plaintiff to contend that the defendants' consent was at all voluntary.

■ Even if the court were to find that the defendants' consent to the rent increase constituted a voluntary and intelligent waiver of the benefits of the rent control law, such a finding avails the plaintiff of nothing. Where a legislature has conferred statutory rights on a private party that affect the public interest, such rights may not be waived where a waiver would contravene the statute's underlying policy. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945); Wirty v. William H. LaDew of Louisiana, Inc., 282 F.Supp. 742 (E.D. La. 1968); see Miller v. Schneider, Civil No. 78-315 (D.V.I., Div. St. T. & St. J., November 16, 1979). Nor may such rights be nullified or varied by a private contract. See Allerton Construction Corp. v. Fairway Apartments Corp., 26 A.D.2d 636, 272 N.Y.S.2d 867 (1966); Grandview Inland Fruit Co. v. Hartford Fire Ins. Co., 189 Wash. 590, 66 P.2d 827 (1957).

■ The purpose of the rent control law is to prevent undue rent increases, unreasonable evictions and any other practices relating to housing and business accommodations in the Virgin Islands that may tend to increase the cost of living. 28 V.I.C. § 846, Revision note. See also Greenaway v. Johnson, 13 V.I. 481 (Terr. Ct. 1977); rev'd on other grounds, Civil No. 77/182 (D.V.I., Div. St. Croix, Jan. 30,

1978); Kress, Dunlap and Lane, Ltd. v. Downing, supra. The Legislature clearly indicated the importance of the procedural requirements of the rent control law by providing that "[a]ll rentals may be deemed unjust and unreasonable if they are in an amount greater than as set forth or authorized by the rent control law." 28 V.I.C. § 835. In addition, 28 V.I.R.&R. § 833–2(c) specifically states that:

It shall be unlawful, regardless of any contract, lease or other obligation heretofore or hereafter entered into, for any person to demand or receive any rent for any accommodations in excess of the maximum rent, or otherwise to do or omit to do any act, in violation of any regulation, order or requirement under the Code [see 28 V.I.C. §§ 831–835] or this subchapter, or to offer, solicit, attempt or agree to do any of the foregoing.

Consequently, it is clear that the procedural rights granted to tenants under 28 V.I.C. §§ 831–845 and 28 V.I.R.&R. § 833–6 were created in the public interest, and any attempt to waive them would thwart public policy. The court therefore holds that the attempt by the parties to contract away any such rights is unenforceable. Accordingly, the court concludes that the attempted rent increase was invalid, that the maximum rent of the subject premises remains at $155, and that the premises still are subject to the rent control law. Therefore, since the plaintiff has failed to fulfill the procedural requirements of 28 V.I.R.&R. § 833–6 by failing to procure a certificate of eviction, he is not entitled to maintain this eviction action.

## Past Rent

The only remaining question is whether the plaintiff is entitled to past rent and, if so, how much. Plaintiff claims that defendants have not paid rent from August of 1978 through March of 1979. Defendant Laura Mohan denied that the August 1978 rent was not paid. It is clear, there-

fore, that the defendants for many months paid rent in excess of that permitted by law.

■ The contract to increase the rent clearly was prohibited by the rent control law. See 28 V.I.R.&R. § 833–2(c). As such it was an illegal bargain within the meaning of § 580 of the Restatement of Contracts (1932), and an unenforceable bargain within the meaning of § 320 of the Restatement (Second) of Contracts (Tent. Draft No. 12, March 1, 1977). Therefore it is unenforceable by the plaintiff. Id.; Restatement of Contracts § 598, Comment a (1932).[6] The plaintiff, however, is not precluded from recovery of all past rent. The unenforceable illegal bargain pertained only to a rent increase of $45 a month. At the time of the illegal agreement and at least until notice to quit was given on October 11, 1978, the underlying lease providing for $155 a month rent was still in effect. A tenant is obligated to pay and a landlord may recover the rent reserved in the lease. Restatement (Second) of Property § 12.1 (1977). Thereafter, although plaintiff cannot recover the $45 a month rent increase he may recover $155 a month for the months the underlying lease was in effect.

■ Once the plaintiff gave defendants notice to quit on October 11, 1978, and the defendants refused to vacate, defendants became holdover tenants.[7] During the holdover

---

[6] The rules of the common law, as expressed in the Restatement of Law, approved by the American Law Institute, shall be the rules of decision in the courts of the Virgin Islands in the absence of local laws to the contrary. 1 V.I.C. § 4. Tentative drafts of the restatements not as yet approved by the American Law Institute, while not rising to the same dignity as if finally approved, are a persuasive source of information on the rules of common law. See Varlack v. S.W.C. Caribbean, Inc., 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977); but see Murray v. Beloit Power Systems, Inc., 450 F.Supp. 1145 (D.V.I. 1978), aff'd sub nom Murray v. Fairbanks Morse, 16 V.I. 647 (3d Cir. 1979).

[7] Plaintiff's failure to obtain a certificate of eviction in compliance with the rent control law provides defendant with a good defense to this eviction action. It does not, however, per se invalidate plaintiff's notice to quit. Thus, defendants may be considered holdover tenants from the effective date of the notice to quit. Cf. Restatement (Second) of Property, Introductory Note to Chap. 14, § 14.9(1) (1977).

period a landlord is entitled to recover from the tenant at a rate based on the previous rent, unless the parties validly agree otherwise. Restatement (Second) of Property § 14.5 (1977). Because the subject premises were subject to rent control, the parties could not validly agree to an increase in rent without the approval of the rent control officer. Thus, plaintiff is entitled to recover $155 a month from defendants from October 1978 to the present.

■■ The only remaining issue then is the amount of rent owed to the plaintiff. Defendant Laura Mohan asks the court to reduce the past rent found to be due to the plaintiff by the amount defendants paid under the illegal contract in excess of the maximum legal rent of $155 per month. Defendants are clearly entitled to this reduction. Generally, a party to an illegal bargain cannot, by enforcing or rescinding the bargain, recover benefits conferred under the bargain. Restatement (Second) of Contracts § 320 (Tent. Draft No. 12, March 1, 1977); Restatement of Contracts § 598 (1932). However, where enforcement of this rule produces a harmful effect on the party intended to be protected by the law making the bargain illegal, recovery will be allowed. Restatement of Contracts § 601 (1932),[3] see William J. Davis, Inc. v. Slade, 271 A.2d 412 (D.C. App. 1970); Miller v. Peoples Contractors, Ltd., 257 A.2d 476 (D.C. App. 1969); Holst v. Butler, 379 Pa. 12, 108 A.2d 740 (1954); City of Philadelphia v. Rosin's Parking Lots, 358 Pa. 174, 56 A.2d 207 (1948); Rubin v. Douglas, 59 A.2d 690 (D.C. Mun. Ct. App. 1948). The defendants clearly are parties intended to be protected by the rent control law, and prohibiting recovery of past rent overpayments would harm defendants. The defendants, therefore, are entitled to have the amount of rent owed to the plaintiff reduced by any past overpayments.

[3] This is consistent with the Restatement (Second) of Contracts §§ 340, 342(b) (Tent. Draft No. 12).