**WALTER CARIBBEAN CORP., Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

Civil No. 1974-1

District Court of the Virgin Islands

Div. of St. Croix

March 16, 1976

DAVID O'BRIEN, ESQ., (MERWIN, ALEXANDER & O'BRIEN),
Christiansted, St. Croix, V.I., *for plaintiff*.

JAMES W. DIEHM, ESQ., Assistant Attorney General, Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *Judge*

## MEMORANDUM OPINION AND JUDGMENT

Plaintiff Walter Caribbean Corporation (hereinafter plaintiff or "WCC") is a Virgin Islands corporation engaged in the business of operating a mobile home park. Specifically, WCC owns Peppertree Terrace, a community of mobile homes and trailers located near Island Center, St. Croix, U. S. Virgin Islands. Plaintiff's modus operandi consists of renting plots of land to individuals furnishing their own trailer homes as well as renting plots of land with plaintiff's trailers situated thereon. In both situations, however, WCC supplies certain basic services and utilities.

On January 2nd, 1974, WCC filed its complaint in the U.S. District Court alleging that heretofore, the rents which it had been charging for plots of land within the mobile home park had been governed by the provisions of the Virgin Islands Rent Control Law, 28 V.I.C. §§ 831–846; that the justification for applying rent control to designated properties depends upon the existence of a public emergency with respect to the shortage of those very types of housing accommodations; and that the shortage of plots of land on St. Croix for the placement of mobile superficiary accommodations which occasioned the inclusion of such accommodations within the Rent Control Law no longer exists. Accordingly, plaintiff prayed for a judgment declaring that the housing emergency with respect to mobile homes on St. Croix has ended and, therefore, that the provisions of 28 V.I.C. §§ 831–846 could no longer apply to its property.

Defendant, Government of the Virgin Islands (hereinafter referred to as defendant or "GVI") filed its general denial on April 19, 1974 and thereafter moved, on July 11th, for Judgment on the Pleadings based upon WCC's alleged failure to state a claim upon which relief can be granted. Oral argument was heard on the motion and, after reviewing the submitted memoranda, I denied GVI's motion. Thereupon, after an exchange of written interrogatories, the case was docketed for November 7, 1975.

At the non-jury trial, plaintiff produced three witnesses. Mr. William H. Walter, plaintiff's president, testified that the Peppertree Terrace mobile home park provided two (2) types of housing arrangements. On the majority of its plots, WCC has installed trailers and rents these lots and trailers out for $185.00/month. No rent control is exerted over these units and they are not the subject-matter of this litigation. With respect to the remainder of its lots, however, WCC rents them out to various tenants who provide their own housing units. Rent control is exerted over these plots and as a consequence thereof, the maximum allowable rental per lot has been fixed at $92/month. Mr. Walter further testified that only two-thirds of Peppertree Terrace has been developed and that the occupancy rate for the developed portion has never exceeded ninety (90) percent.

Plaintiff's next witness was Mr. Aloy Nielsen, an urban planner and designer. Mr. Nielsen testified that according to a study which he had made, the Virgin Islands Zoning Code permits mobile homes to be placed on 94% of the acreage in St. Croix. (Residential Zones R1, R2, R3, R4 and R5 account for 68% of St. Croix's total acreage, Agricultural Zones A1 and A2 for 24%, and Waterfront Pleasure Zone W1 for an additional 2%). Upon cross-examination, however, GVI's counsel elicited the admission that Mr. Nielsen's study, undertaken on behalf of President Walter, was confined to land available for mobile homes and not

for superficiary housing. Moreover, his study did not take into account such pertinent and relevant factors as the willingness of landowners to have mobile homes located on their property and the supply and demand (past, present and future) for mobile homes on St. Croix. Thus, Mr. Nielsen's study "merely" demonstrated that based upon the zoning laws, there is an excess supply of land potentially available for the placement of mobile homes.

Finally, plaintiff called Mr. Donn B. Schindler, real estate broker and land developer, to the stand. Mr. Schindler testified that while the pre-1972 zoning laws confined mobile home placements to five or more acre mobile home parks, the present zoning laws permit mobile homes to be located as a matter of right in any of the eight zones listed above. Testifying further that the zoning laws did not draw a distinction between mobile homes and superficiary housing, Mr. Schindler gave his opinion, based upon his personal knowledge of the zoning laws and familiarity with the feelings of St. Croix landowners, that there was more than enough land available in St. Croix today for the placement of superficiary housing. At this point, plaintiff rested.

Prior to the calling of its first witness, counsel for defendant GVI approached the bench and informed both the Court and opposing counsel that the evidence it was prepared to adduce would show that there is a serious shortage of housing in the $175/month and under category, that government housing is the major component of the $175 and under category, that there is little or no housing available in the private sector for less than $175, that no government housing is presently available and that there is a long waiting list for the same. Plaintiff objected to the introduction of this evidence on the grounds of relevancy. After listening, to counsel's arguments, I ruled from the bench that unless the Government could demon-

strate that superficiary housing was a major component of the $175 and under category, I would have to sustain WCC's objection. Defendant admitted it could not and accordingly its evidence was ruled inadmissible. At this point, the parties entered into a stipulation for the record that there was a shortage of government housing, that over 90% of government housing falls within the less than $175/month category, that there is some duplication and other errors in the waiting lists, and that there is virtually no private housing available in the above-stated low rental category. Defendant then rested.

During closing arguments, the real issue, as I view the matter, was brought out. Plaintiff's position, as effectively articulated by counsel, was and is that superficiary housing is a distinct type of low-income housing. As such, it can be determined whether or not a housing emergency exists for that type of housing alone. And, plaintiff asserted, the evidence it adduced demonstrated that no such emergency presently exists. The Government, on the other hand, took the position that an emergency still exists for housing in the $175/month and under category and that it is improper to attempt to further subclassify the categories of low-income housing. Thus, the issue is clearly drawn.

So-called "rent control" is no stranger to the U.S. Virgin Islands. In 1941, the Municipal Council of St. Thomas and St. John recognized the then-existing acute housing shortage and declared a state of emergency. By the ordinance which it approved June 13, 1941, the Municipal Council established a procedure for regulating the eviction of tenants under circumstances where the rents attempted to be exacted could be said to be unjust and unreasonable. Five years later, similar regulation was extended to St. Thomas and St. John premises rented for business purposes and superficiary houses. These ordinances were repealed and superceded in December of 1947 by the Emer-

gency Rent Act which continued to provide maximum rent ceilings for premises used for residential or business purposes or on which superficiary houses were constructed. (See Act of the Municipal Council of St. Thomas and St. John, approved December 5, 1947, Bill No. 92, as amended by Bill No. 171, approved December 22, 1947.) St. Croix was brought under the coverage of this Act with the passage, in 1955, of Act No. 24 by the First Legislature of the Virgin Islands. (See Session Laws of the Virgin Islands— 1955, section 13 at p. 39.) Codification of these legislative measures into the Rent Control Law as we now know it— 28 V.I.C. §§ 831–846—took place in 1957.

The first time a federal court had occasion to consider the validity of the rent control provisions came in Kress, Dunlap & Lane, Ltd. v. Downing, 286 F.2d 212 (3rd Cir. 1960) (hereinafter referred to as Kress I). Therein, the controversy centered around the correct interpretation to be given to 28 V.I.C. § 846. In pertinent part, that section provides that the rent control provisions of the Code

... shall remain in force and effect only for the duration of the public emergency with respect to the shortage of housing and business accommodations declared to exist by Ordinance of the Municipal Council of St. Thomas and St. John approved December 5, 1947. . . . Upon declaration by Resolution or Act of the Legislature that such emergency has ceased to exist, the provisions of this subchapter shall have no further application.

In Kress I, the Price and Rent Control Agency, the Commissioner of Property and Procurement, and the District Court had all denied petitioner's attempts to raise its monthly rentals based upon its assertion that the emergency upon which the controls were enacted had ceased to exist. In its Conclusions of Law, the District Court stated that the rent control provisions were valid and that "revision of the same is a matter within the competence of the Legislature." (Kress I at p. 214.) Upon appeal, Judge Kalodner held that since there was an issue as to a mate-

rial fact (whether or not an emergency continued to exist within the meaning of the statute), it was improper for the District Court to have granted summary judgment. Accordingly, the Third Circuit reversed and remanded the case with the direction to the District Court to receive evidence as to the existence or non-existence of an emergency. (Kress I at p. 215.)

Upon remand, the case was tried before Circuit Judge Maris, sitting by designation. After taking testimony and receiving submitted briefs, he issued his opinion: Kress, Dunlap & Lane, Ltd. v. Downing, 193 F.Supp. 874 (D.C.V.I. 1961) (hereinafter referred to as Kress II). Therein, he wrote that while the legislature may regulate the rents charged by landlords for housing or business accommodations as an exercise of its police power when it finds that a public emergency has been brought about by a shortage of such properties (Kress II at p. 878, citing Block v. Hirsch, 256 U.S. 135 (1921) and Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398 (1934)).

[a] law based upon the existence of an emergency may cease to operate if the emergency ceases or the facts change even though the statute was valid when enacted, it being always open to the court to determine whether the emergency, upon which the continued operation of the law depends, still exists. (Kress II at pp. 878–9, citing Chastleton Corp. v. Sinclair, 264 U.S. 543 (1924) and United States v. Carolene Products Co., 304 U.S. 144 (1938).)

Upon considering the facts as developed by the evidence in the case, Judge Maris found that the units subject to the Rent Control Law could be classified into four main categories: low rental housing accommodations (less than $75 per month), medium rental housing accommodations ($75 to $175 per month), high rental housing accommodations (more than $175 per month), and business accommodations. (Kress II at p. 879 citing Woods v. Cloyd W. Miller Co., 333 U.S. 138 (1948).) And based upon this carefully

erected framework, Judge Maris made specific findings of fact as to each of the four categories. He then concluded that the Rent Control Law no longer applied to housing accommodations which rent for more than $175 per month or to business accommodations but that it continued to apply to the low and medium rental categories.

(I have taken the time to trace this historical development because it demonstrates not only that rent control here in the Virgin Islands has evolved over the years but also that various categories of housing have been brought under or removed from its coverage by judicial as well as legislative decision. Thus, the question is not whether I *can* establish a further subclassification of housing accommodations for the purpose of testing the validity of the continued application of the rent control provisions to some of those classes but rather whether I *should*.)

■ Defendant Government of the Virgin Islands admits that for the purpose of determining whether or not the housing emergency continues to exist, classifications may be made and a determination reached with respect to each category separately. And it accordingly acknowledges the categories which Judge Maris derived in Kress II. Somewhat inconsistently, however, it argues that no further subclassifications are permissible since "the issue is the availability of housing accommodations within each category, and the emergency as to a particular category would cease to exist only if there were adequate accommodations to fulfill the need as to the entire category." Surely this is a non sequitur. If the Court can create categories, then there is no reason to be frozen into the existing ones unless further subdivisions can be shown to be arbitrary, irrational, unadministrable, or unreasonable.

At the present time, there exists two alternative methods of classification; one created by the legislature and one announced by the courts. In Kress II, Judge Maris estab-

lished a "classification by *tenant objective*" system superimposed upon a *rental magnitude* grid. Accommodations were rented either for residential or for business purposes. And if they were of the former type, they could be further divided into three groups depending upon the amount of monthly rental charge. With the perspective that the passage of time alone brings, it might be said that Judge Maris's system was a functional one—i.e., he employed it to reach the result which he wanted. But while that sounds rather harsh, his opinion neither reflects why nor indicates how he arrived at this particular structuralization. And with the subsequent remodeling of Government House, the file containing his bench notes has long since disappeared. Nevertheless, this method of classification has remained unchallenged for over fifteen years.

On the other hand, the Virgin Islands Code sanctions a "classification by *property type*" as well as a classification by tenant objective. The fundamental concept in Subchapter III of Chapter 31, the one upon which all the provisions hinge, is that of "accommodations." That term is defined by both 28 V.I.C. § 831 and 28 V.I.R.&R. § 831–1(1) to mean "any building, structure or part thereof, or land appurtenant thereto, or *any* other *real or personal property rented or offered to rent for living, dwelling or business purposes in the Virgin Islands, including land rented for the location of a superficiary house.*" (Emphasis supplied.) It seems clear that by such a definition the Legislature intended to have its Rent Control Law apply not only to buildings and structures but to land as well. The rationale behind such a definition is not nearly as strange as one might be led to believe upon a quick reading. For it is entirely likely that the Legislature intended to nip in the bud any attempts to circumvent the Rent Control Law by ingenious landowners who might be tempted to finance their tenants' efforts to erect structures

upon their land and call the exchange of funds mortgage repayments instead of rent. And, of course, the Virgin Islands has also had a long experience of "true" superficiary housing given the size of its "Alien" population. In any event, the Code itself implicitly sets up as a separate category land rented for the location of a superficiary house to be used for personal habitation. Therefore, I can certainly use this category to determine whether or not a housing emergency with respect to this category continues to exist on St. Croix.

Unfortunately, having used the term "superficiary house", the Rent Control Law does not attempt to define it. Neither can its definition be found among the provisions of the Zoning Law, 29 V.I.C. §§ 221–242. That subchapter, however, does furnish definitions for buildings, structures, and mobile homes. 29 V.I.C. § 225(19) defines a "building" as "[a]ny *structure* having a roof, supported by columns or by walls and *intended for the shelter, housing or enclosure of any person, animal or goods.*" (Emphasis supplied.) According to 29 V.I.C. § 225(96), a "structure" is "[a]nything constructed or erected which *requires permanent location* on the ground or attachment to something having location." (Emphasis supplied.) On the other hand, 29 V.I.C. § 225(71) defines a "mobile home" to be "[a]ny *dwelling, trailer, or unit designed and constructed for living or sleeping purposes which is equipped with wheels or similar devices for the purpose of transporting the unit,* and such unit shall be considered a mobile home *whether or not the wheels have since been removed* and whether or not ultimately set on jacks, masonry blocks or other foundation, with or without skirtings." (Emphasis supplied.) A careful examination and comparison of these definitions leads inescapably to the conclusion that a mobile home is neither a building nor a structure since the latters' essence is their inherently fixed relationship to the land.

577

I have already mentioned that neither the Rent Control nor Zoning Laws provide a definition for the term "superficiary housing." Nor are other Code Chapters any more helpful. The only place in the Code where that term is used is in the Homesteads and Home Loans Title, section 4(2) of which grants persons concurrently owning and living in superficiary buildings a secondary priority in purchasing lands for homesteads. Unhappily, however, the term once again is not defined. In fact, the only statutory definition of that term is found in section 1 of Act No. 521, Session Laws of the Virgin Islands—1960, entitled an Act "To Provide for Acquisition of Land by the Government of the Virgin Islands for Resettlement, Through a Local Urban Renewal Program of Superficiary House Owners, to Provide an Appropriation Therefor, and for Other Purposes." That statutory definition is as follows:

For the purpose of this Act, a "superficiary house" shall be a property in which title to the land is vested in one owner and title to the *building* is vested in a separate owner. (Emphasis supplied.)

At first blush, this would certainly seem to indicate that a mobile home could never be a superficiary house since the latter is a building. And, to follow the logic of this argument out to its natural conclusion, this would mean that mobile homes are, ex definitione, outside the coverage of the Rent Control Law. Despite the relative attractiveness of using just such an approach to dispose of the problem sub judice, to so proceed would be not only disingenuous but also intellectually dishonest.

■ Thirteen years ago, the Third Circuit had occasion to amplify and discuss the above-mentioned definition. Writing for the Court in Nicholson v. Altona Corporation, 320 F.2d 8 (3rd Cir. 1963), Judge Maris stated that a "superficiary house" was "one owned by a person other than the owner of the land on which it stands." (Nicholson at p. 10.) But while he referred to it as a building, he meant

578

only those buildings which are capable of being removed without substantial damage to the land. Drawing upon the common law, a British Virgin Islands statute, and several United States Virgin Islands statutes and regulations, he stated that the essence of a superficiary dwelling was the element of removability. (Nicholson at pp. 10–11, text and footnotes.) Thus, a superficiary house is also neither a building nor structure as those terms are used in the Zoning Law.

The upshot of all of this is that not all mobile homes are superficiary houses, not all superficiary houses are mobile homes, neither are buildings or structures, and both are subject to the Rent Control Act indirectly through the regulation of the rentals charged for the land upon which they are positioned. If the owner of a mobile home also has title to the land upon which it is located, the mobile home is not a superficiary house. On the other hand, the stereotypical superficiary house (i.e., the small wooden or tin shanty) is not a mobile home since it was never equipped with wheels or similar transportation facilities. In short, the two terms become the same only when owners of units built with wheels or similar devices position or locate those units on land owned by another.

■ Based upon the foregoing analysis and the testimony adduced at trial, I *cannot* in good conscience find that the housing emergency on St. Croix has ceased to exist with respect to the category of housing referred to as superficiary accommodations. Plaintiff simply has not met its preponderance of the evidence stand and with respect to *that* category. However, it is common knowledge that there are really two types of superficiary accommodations: those truly mobile in the sense of coming equipped with wheels (whether or not they have been removed) and those whose removal from the land requires either disassembly or the assistance of other transporta-

tion modalities. Moreover, I take judicial notice of the fact that mobile homes are the only members of this mobile superficiary accommodations class on St. Croix. Therefore, inasmuch as plaintiff WCC has overwhelmingly met its burden of proof with respect to *this* category, I now find that the housing emergency with respect to mobile superficiary accommodations on St. Croix no longer exists. Accordingly, the provisions of 28 V.I.C. §§ 831–846 no longer apply to plaintiff's property.

### JUDGMENT

In accordance with the Memorandum Opinion of even date herewith, it is hereby

ORDERED, ADJUDGED and DECREED:

1. That the housing emergency with respect to mobile superficiary accommodations on St. Croix no longer exists;

2. That the provisions of the Virgin Islands Rent Control Act no longer are applicable to plaintiff Walter Caribbean Corp.'s Peppertree Terrace Properties; and

3. That plaintiff may recover its costs and reasonable attorney's fees from defendant Government of the Virgin Islands. Plaintiff shall have two weeks from the date of this Judgment to submit its verified Bill of Costs.